JOHNSON & PHAM, LLP
Christopher D. Johnson, SBN: 222698
    E-mail: cjohnson@johnsonpham.com
Christopher Q. Pham, SBN: 206697
    E-mail: cpham@johnsonpham.com
Marcus F. Chaney, SBN: 245227
    E-mail: mchaney@johnsonpham.com
Ani Sakalian, SBN: 274846
    E-mail: asakalian@johnsonpham.com
Jason R. Vener, SBN: 267941
    E-mail: jvener@johnsonpham.com
6355 Topanga Canyon Boulevard, Suite 115
Woodland Hills, California 91367
Telephone:   (818) 888-7540
Facsimile:    (818) 888-7544

Attorneys for Plaintiff
ZUMBA FITNESS, LLC

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| ZUMBA FITNESS, LLC, a Florida Limited Liability Company,<br><br>                      Plaintiff,<br><br>           vs.<br><br>WILLIAM CHESTER MOORE, an Individual, and Does 1-10, Inclusive,<br><br>                      Defendants. | Case No.: CV11-02448 PA (MANx)<br><br>**NOTICE OF MOTION AND MOTION FOR ENTRY OF DEFAULT JUDGMENT BY COURT; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF ANI SAKALIAN IN SUPPORT THEREOF**<br><br>Date:          July 18, 2011<br>Time:          1:30 p.m.<br>Courtroom:  15 |
|---|---|

- 1 -
**MOTION FOR ENTRY OF DEFAULT JUDGMENT BY COURT**

1   TO THE DEFENDANT AND TO THE COURT:

2   PLEASE TAKE NOTICE THAT on Monday, July 18, 2011, at 1:30 p.m., or
3   as soon thereafter as this matter may be heard in Courtroom 15 of the above-
4   entitled Court, located at 312 N. Spring Street, Los Angeles, California 90012,
5   Plaintiff ZUMBA FITNESS, LLC will present its motion for entry of default
6   judgment against Defendant WILLIAM CHESTER MOORE for damages and
7   injunctive relief.  This application is made pursuant to Rule 55(b) of the *Federal*
8   *Rules of Civil Procedure* ("*Fed.R.Civ.P.*") which provides for a court ordered
9   default judgment following entry of default by the court clerk under *Fed.R.Civ.P.*
10  55(a), and pursuant to 15 *United States Code* ("*U.S.C.*") §§ 1114, 1125(a) and (c),
11  and 17 *U.S.C.* §501(a).

12  This application is based upon this Notice of Motion for Entry of Default
13  Judgment by Court, the attached Memorandum of Points and Authorities, and the
14  Declaration of Ani Sakalian filed concurrently herewith, the papers and records on
15  file herein, and upon such oral and documentary evidence as may be presented at
16  the hearing of this matter.

17

18  DATED: June 9, 2011                    JOHNSON & PHAM, LLP

19

20

21                                         By: _____
22                                         Ani Sakalian, Esq.
                                           Attorneys for Plaintiff
23                                         ZUMBA FITNESS, LLC

24

25

26

27

28

- 2 -
**MOTION FOR ENTRY OF DEFAULT JUDGMENT BY COURT**

## TABLE OF CONTENTS

Page

I.    FACTUAL BACKGROUND………..………...…………….3

II.   LEGAL STANDARD……………………….………...….4

III.  ANALYSIS OF <u>EITEL</u> FACTORS……………....…….....4

    A.    <u>Prejudice to Plaintiff</u>………………...……...…….4

    B.    <u>Plaintiff's Substantive Claims are Meritorious</u>……...5

    C.    <u>Sufficiency of Plaintiff's Complaint</u>…………...........5

        1.    <u>Trademark Infringement Claim</u>……………….5

           (a)   Plaintiff's ownership of trademarks at
                issue………………….……......……..…..6

           (b)   Defendant's use of Plaintiff's trademarks
                in commerce…………………….…..……..6

           (c)   Likelihood of confusion………..…..……..7

                (i)    Strength of the allegedly infringed
                      mark……………..………………..7

                (ii)   Proximity or relatedness of
                      goods.……………………….……10

                (iii)  Similarity of sight, sound, and
                      meaning of marks…………..……..10

                (iv)   Degree to which marketing channels
                      converge………………………....…11

                (v)    Type of goods and degree of care
                      consumers are likely to exercise in
                      purchasing goods……………..…....11

i

(vi)   Intent of the Defendant in selecting the allegedly infringing mark……..11

(vii)  Evidence of actual confusion and likelihood that the parties will expand their product line…….……..….12

(viii) Conclusion…………….…...........12

**2.    Copyright Infringement Claim**……...……...12

(a)   Plaintiff's ownership of valid copyrights...12

(b)   Defendant's copying of original elements of Plaintiff's works……………………....…..13

**3.    Trademark Dilution Claim**………..……....13

(a)   Plaintiff's ownership of famous marks…………………………………......13

(b)   Defendant's commercial use of Plaintiff's Famous marks………………….…....…15

(c)   Defendant's use began after Plaintiff's marks were famous………………….........15

(d)   Defendant's use tarnishes the quality of Plaintiff's marks……………………....…..15

**D.   <u>Sum of Money at Stake</u>**...……………………………16

    **1.    Statutory Damages for Trademark Infringement and Trademark Dilution**………16

    **2.    Statutory Damages for Copyright Infringement**………………….…...……………17

**E.   <u>No Possiblity of Dispute Concerning Material Facts</u>**............................................................18

F.   Default Not Due to Excusable Neglect.................18

G.   Policy Favoring Decisions on the Merits Does Not
     Outweigh Plaintiff's Right to Relief...................18

IV.   REMEDIES..........................................................18

A.   Statutory Damages....................................19

B.   Costs.........................................................21

C.   Attorneys' Fees.........................................22

D.   Injunctive Relief.......................................22

V.   CONCLUSION..................................................23

     DECLARATION OF ANI SAKALIAN.................24

# TABLE OF AUTHORITIES

**CASES:**

Adobe Systems Inc. v. Brooks,
3 2009 WL 593343 (N.D. 2009) ............................................................................ 20

AMF Inc. v. Sleekcraft Boats,
599 F.2d, 349 (9th Cir,1979) ........................................................... 6, 10, 11

Brookfield Communications, Inc. v. West Coast Entertainment Corp.,
174 F.3d 1047(9th Cir. 1999) ............................................................... 5, 7, 8

Columbia Pictures Television, Inc. v. Krypton Broadcasting of Birmingham,
Inc.,
F.3d 1194 (9th Cir. 2001) ...................................................................... 20

Eitel v. McCool,
782 F.2d 1472 (9th Cir.1986) ................................................................ 4, 5

E & J Gallo Winery v. Gallo Cattle,
967 F.2d, 1290 (9th Cir. 1992) ........................................................ 6, 7, 10

Feist Pubs., Inc. v. Rural Telephone Service Co., Inc.,
499 U.S. 361 (1991) ................................................................................. 12

F.W. Woolsworth Co. v. Contemporary Arts,
344 U.S. 233 (1952) ................................................................................. 19

Joujou Designs, Inc. v. Jojo Ligne Internationale,
821 F.Supp. 1354 (N.D.Cal.1992) ............................................................. 8

Lindy Pen Co. v. Bic Pen Corp.,
982 F. 2d 1409 (9th Cir. 1993) ................................................................. 22

M2 Software, Inc. v. Madacy Entertainment Corp.,
421 F.3d, 1080 (9th Cir.2005) ................................................................... 6

Mead Data Central, Inc. v. Toyota Motor Sales, U.S.A., Inc.,
875 F.2d 1026 (2nd Cir. 1989) ................................................................. 13

Panavision, Int'l v. Torppen,
141 F.3d 1324 (9th Cir.1998) .................................................................. 13

Peer Int'l Corp. v. Pausa Records Inc.,
909 F. 2d 1332 n.3 (9h Cir. 1990) ............................................................ 19

PepsiCo Inc. v. Cal. Sec. Cans,
238 F.Supp.2d 1178 (C.D. Cal. 2002) ...................................................... 22

Philip Morris USA, Inc. v. Castworld Products, Inc.,
219 F.R.D. 501 (C.D. 2003) ......................................................... 18, 19, 20

Philip Morris v. Shalabi,
352 F.Supp.2d. 1072 (C.D.Cal.2004) ........................................................ 5

Taylor Made Golf Co., Inc., v. Carsten Sports Ltd.
175 F.R.D. 658 ........................................................................................ 22

TeleVideo Systems, Inc. v. Heidenthal,
826 F.2d 918 (9th Cir. 1987) ................................................................. 4, 5

Thane International, Inc. v. Trek Bicycle,
305 F.3d, 912 (9th Cir. 2008) .................................................................... 8

Toys "R" Us v. Akkaoui,
40 U.S.P.Q. 2d (BNA) 1836 (N.D. Cal. 1996) .................................... 13,15

**STATUTES:**

Fed. R. Civ. P. 55(a) ............................................................................... 2,4

Fed. R. Civ. P. 55(b)(2) ............................................................................ 18

15 U.S.C. § 1114 ..................................................................................... 2,5

15 U.S.C. § 1114(1) .................................................................................. 22

15 U.S.C. § 1116(a) .................................................................................. 22

15 U.S.C. § 1117(a) .............................................................................. 21,22

15 U.S.C. § 1117(b) ................................................................................................ 22

15 U.S.C. § 1117(c)(1) .......................................................................................16,17

15 U.S.C. § 1117(c)(2) ........................................................................................... 16

15 U.S.C. § 1117(e) ................................................................................................ 22

15 U.S.C. § 1125 (a) .......................................................................................2, 5, 21

15 U.S.C. § 1125 (c) ...............................................................................2, 5,16,21,22

17 U.S.C. § 501(a) ................................................................................................2,5

17 U.S.C. § 504(c)(1) ............................................................................................. 17

17 U.S.C. § 504(c)(2) ............................................................................................. 17

*Lanham Act § 32(a)* ................................................................................................ 5

*Lanham Act § 43(a)* ................................................................................................ 5

*California Business & Professions Code § 17200* .................................................. 5

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    FACTUAL BACKGROUND

Plaintiff ZUMBA FITNESS, LLC ("Plaintiff") is a health, wellness and fitness company involved in, among other things, the development, production, sale, marketing, and distribution of fitness programs, fitness DVDs, fitness products, and fitness apparel. One of the main components of Plaintiff's business encompasses the production, sale and distribution of its Zumba® fitness programs, fitness DVDs, fitness products, and fitness apparel, including its famous Zumba Fitness® DVDs, Zumba® Toning Sticks and Zumba® apparel. *See* Complaint ("Compl.") at ¶10.

Plaintiff owns numerous trademarks and copyrights for its Zumba® and Zumba Fitness® DVDs, and related products. *See* Compl. at ¶17-20, and Ex. "A"-"U," thereto. Defendant WILLIAM CHESTER MOORE ("Defendant") is an individual residing at 528 Wilson Road, Annapolis, Maryland 21401-1052. *See* Compl. at ¶2; *see also* Declaration of Ani Sakalian ("Sakalian Decl.") at ¶2.

Plaintiff investigates and enforces against the manufacturing, copying, exporting, importing, advertising, promoting, selling, and distributing of counterfeit, or otherwise unauthorized, versions of its Zumba®-branded fitness products. *See* Compl. at ¶22-28.  On March 13, 2011, Plaintiff purchased a purported "ZUMBA FITNESS 4 DVD Box Set Factory Sealed" from Defendant from the Internet auction website known as eBay.com ("eBay"), under seller ID "showswel," for a cost of $63.99 charged to the PayPal electronic payment account of Plaintiff's investigator. *See* Compl. at ¶24, and Ex. "V," thereto; *see also* Sakalian Decl. at ¶3, and Ex. "A" - "B," thereto.  The product purchased from Defendant was inspected to determine authenticity.   The inspection of the purchased item confirmed that the item Defendant sold to the investigator were, in fact, counterfeit and unauthorized Zumba® fitness DVDs. *See* Compl. at ¶25; *see also* Sakalian Decl. at ¶4, and Ex. "C" - "D," thereto.

1    Plaintiff filed its Complaint against Defendant on March 23, 2011, and
2    Defendant was served with a copy of the Summons and Complaint on April 8,
3    2011. *See* Sakalian Decl. at ¶5.  Pursuant to Rule 55 of the *Federal Rules of Civil*
4    *Procedure ("Fed.R.Civ.P.")*, a party seeking default judgment must first have the
5    clerk enter the default. *Fed.R.Civ.P.* 55(a).  Plaintiff requested entry of default
6    against Defendant on May 5, 2011, and the clerk entered default of said Defendant
7    on May 17, 2011. *See* Sakalian Decl. at ¶6.

8                              **II.    LEGAL STANDARD**

9        Sufficient grounds exist for the entry of a default judgment against the
10   Defendant. The Ninth Circuit has enumerated several factors the Court should
11   consider in deciding whether to  grant default judgment:   the possibility of
12   prejudice to the plaintiff, the merits of plaintiff's substantive claim, the sufficiency
13   of the complaint, the sum of money at stake in the action, the possibility of a
14   dispute concerning material facts, whether the default was due to excusable neglect,
15   and the strong policy underlying the Federal Rules of Civil Procedure favoring
16   decisions on the merits.  *See* Eitel v. McCool, 782 F.2d 1470, 1471-1472 (9th
17   Cir.1986).  In considering the above factors, the Court takes all factual allegations
18   in the Complaint as true, except for those relating to damages.  *See* TeleVideo
19   Systems, Inc. v. Heidenthal, 826 F.2d 915, 917-918 (9th Cir.1987).

20                      **III.    ANALYSIS OF EITEL FACTORS**

21       Application of the facts in this matter to the Eitel factors warrant entry of a
22   default judgment in favor of Plaintiff.

23       **A.    Prejudice to Plaintiff**

24       In light of the fact that the only Defendant in this case has not defended
25   himself in this action, absent a default judgment, Plaintiff will not be compensated
26   for its losses and will accordingly be prejudiced.  Moreover, if this Court fails to
27   enter a default judgment against Defendant, in light of his failure to defend this
28   action, it will set a devastating precedent allowing infringers to avoid liability by

1  effectively not responding to Plaintiff's claims further prejudicing Plaintiff's
2  ability to enforce its intellectual property rights. Furthermore, in the absence of
3  injunctive relief, Plaintiff will continue to suffer harm from the violations
4  committed by Defendant of its trademark and copyright rights.

5  Accordingly, this first Eitel factor, the possibility of prejudice to the plaintiff,
6  weighs in favor of granting default judgment.

7  **B.    Plaintiff's Substantive Claims are Meritorious**

8  (Analyzed below under, and concurrent with, subsection **C**.)

9  **C.    Sufficiency of Plaintiff's Complaint**

10  The second and third Eitel factors, concerning the merits of Plaintiff's
11  substantive claims and the sufficiency of its Complaint, also weigh in favor of
12  granting a default judgment in favor of Plaintiff against Defendant.

13  Plaintiff has alleged seven (7) causes of action in its Complaint against
14  Defendant, to wit: (1) FEDERAL TRADEMARK INFRINGEMENT [15 U.S.C.
15  §1114/*Lanham Act* § 32(a)]; (2) FEDERAL COPYRIGHT INFRINGEMENT [17
16  *U.S.C.* §501(a)]; (3) FALSE DESIGNATION OF ORIGIN/UNFAIR
17  COMPETITION [15 *U.S.C.* §1125(a)/*Lanham Act* § 43(a)]; (4) TRADEMARK
18  DILUTION [15 *U.S.C.* §1125(c)]; (5) UNFAIR BUSINESS PRACTICES
19  [*CALIFORNIA BUSINESS & PROFESSIONS CODE* §17200]; (6) UNFAIR
20  COMPETITION (California Common Law); and (7) UNJUST ENRICHMENT.

21  **1.    Trademark Infringement Claim**

22  The essential elements of the infringement of trademark registration and
23  false designation of origin claims are identical. *See* Brookfield Communications,
24  Inc. v. West Coast Entertainment Corp., 174 F.3d 1036, 1047 (9th Cir.1999).
25  Moreover, the 9th Circuit has consistently held that actions pursuant to
26  *CALIFORNIA BUSINESS & PROFESSIONS CODE* §17200 are "substantially
27  congruent" to claims made under the Lanham Act. *See* Philip Morris v. Shalabi,
28  352 F.Supp.2d 1067, 1072 (C.D.Cal.2004). Therefore, analyzing the merits of the

1    infringement claims is sufficient because the standard of infringement, i.e., the
2    likelihood of confusion, is essentially implicated in the remaining federal and state
3    causes of action. *See* M2 Software, Inc. v. Madacy Entertainment Corp., 421 F.3d
4    1073, 080 (9th Cir.2005).

5          To prove a claim of trademark infringement under Section 32(1) of the
6    *Lanham Act*, a plaintiff must show that: it owns the trademark at issue, the
7    defendant has used in commerce, without authorization, a copy, reproduction,
8    counterfeit or colorable imitation of the plaintiff's mark in connection with the sale,
9    distribution, or advertising of goods and services, and the defendant's use of the
10   mark is likely to cause confusion or to cause mistake or to deceive. *See* 15 *U.S.C.*
11   § 1114(1).  In its Complaint, Plaintiff alleges all facts necessary to prove trademark
12   infringement, along with false designation of origin and unfair business practices,
13   by Defendant.

14                    **(a)    Plaintiff's ownership of trademarks at issue**

15         First, Plaintiff adequately alleges its ownership of twelve (12) trademarks at
16   issue. *See* Compl. at ¶17, and Ex. "A"-"L," thereto.  A federal registration of a
17   mark constitutes prima facie evidence of its validity and of plaintiff's exclusive
18   rights to the mark. *See* Brookfield Communications, 174 F.3d at 1047.

19                    **(b)    Defendant's use of Plaintiff's trademarks in**
20                             **commerce**

21         Second, the "use in commerce" requirement is satisfied as to Defendant.
22   Plaintiff alleges that Defendant sold counterfeit Zumba®-branded fitness DVDs,
23   specifically, four (4) counterfeit Zumba Fitness® DVDs, for a cost of $63.99 on
24   eBay, and that Defendant used images confusingly similar or identical to Plaintiff's
25   Zumba® and Zumba Fitness® trademarks without consent or authorization to sell
26   the counterfeit Zumba® fitness DVDs. *See* Compl. at ¶24, and Ex. "V," thereto;
27   *see also* Sakalian Decl. at ¶3, and Ex. "A" - "B," thereto.
28   / / /

### (c)   Likelihood of confusion

The third element of trademark infringement is the likelihood of confusion, or whether the similarity of the marks is likely to confuse customers about the source of the products. *See* E & J Gallo Winery v. Gallo Cattle, 967 F.2d 1280, 1290 (9th Cir.1992). Likelihood of confusion is analyzed using an eight-factor test established by the Ninth Circuit, i.e.: (i) strength of the allegedly infringed mark; (ii) proximity or relatedness of goods; (iii) similarity of sight, sound, and meaning of marks; (iv) degree to which marketing channels converge; (v) type of goods and degree of care consumers are likely to exercise in purchasing goods; (vi) intent of the Defendant in selecting the allegedly infringing mark; (vii) evidence of actual confusion and likelihood that the parties will expand their product lines; and (viii) conclusion. *See* AMF Inc. v. Sleekcraft Boats, 599 F.2d 341, 348-349 (9th Cir.1979). Applying this test to Plaintiff's Zumba® marks and Defendant's infringement thereof by selling counterfeit Zumba Fitness® DVDs should lead this Court to conclude that Plaintiff has successfully pled a likelihood of confusion.

### (i)   Strength of the allegedly infringed mark

The strength of Plaintiff's Zumba® and Zumba Fitness® marks is adequately alleged in Plaintiff's pleadings and weighs in favor of a likelihood of confusion.

The strength of a mark is based on the distinctiveness of the mark and whether it has acquired secondary meaning, i.e., whether it has come to be associated with a good or service. *See* Gallo Cattle, 967 F.2d at 1291. Plaintiff's Zumba® mark is suggestive, as applied to its Zumba Fitness® DVDs, which includes, amongst other works: four (4) different DVDs including a Latin-inspired dance-fitness program that blends red-hot international music, created by Grammy Award-winning products, and contagious steps to form a "fitness party" that is downright addictive. *See* Compl. at ¶10; *see also* Sakalian Decl. at ¶7, Ex. "E," thereto. Suggestive marks are those which convey an impression of a good but

1    require the exercise of imagination and perception to reach a conclusion as to the

2    product's nature. *See* Brookfield Communications, 174 F.3d at 1058 (providing as

3    an example of a suggestive mark, "Roach Motel" for insect traps); *see also* Thane

4    International, Inc. v. Trek Bicycle, 305 F.3d 894, 912 (holding that a bicycle

5    manufacturer's "TREK" trademark was suggestive, because 'trek' means a long

6    journey, and one can undertake a long journey on a bicycle). Here, Plaintiff's

7    Zumba® and Zumba Fitness® marks and the message behind use of the fitness

8    DVDs in the Zumba® DVD box set evoke a sense of exhilaration, effective, easy-

9    to-follow, Latin-inspired, calorie-burning dance fitness party™ that's moving

10   millions of people toward joy and health. *See* Sakalian Decl. at ¶7, Ex. "E,"

11   thereto.

12        The length of time that Plaintiff has used its mark in the marketplace further

13   establishes the strength of the mark. Plaintiff alleges in its Complaint that it has

14   been using the Zumba® trademark since as early as 2001. *See* Compl. at ¶10, 17,

15   and Ex. "A"-"L," thereto. Thus, the status of this mark as a suggestive mark,

16   coupled with the duration of its use in the marketplace, establishes that it is a

17   strong mark, which makes consumer confusion more likely. *See* Joujou Designs,

18   Inc. v. Jojo Ligne Internationale, 821 F.Supp. 1347, 1353-1354 (N.D.Cal.1992).

19        Moreover, Plaintiff has spent substantial time, money and effort in

20   developing consumer recognition and awareness of its marks, copyrights and

21   products. Plaintiff has spent an enormous amount of money on print and internet

22   advertising in order to inform consumers of the benefits Plaintiff's products and

23   services. Through the extensive use of the Plaintiff's marks, Plaintiff has built up

24   and developed significant goodwill in its entire fitness product line. A wide array

25   of newspapers, magazines and television networks have included advertising of

26   Plaintiff's products, which are immediately identified by Plaintiff's marks and

27   have featured full length articles describing both the popularity and benefits of the

28   Zumba® Fitness products, apparel and programs. These periodicals and new media

1   outlets have included, The Washington Post, CNN, The New York Times, Shape

2   Magazine, The Wall Street Journal, Redbook, Time Magazine, Readers Digest,

3   The London Times, Reuters, SELF Magazine, Cosmopolitan Magazine, Variety

4   Magazine as well as many others. *See* Compl. at ¶12.

5        Plaintiff is also heavily involved in and uses its popularity to pursue

6   charitable and socially beneficial goals. For example, small support groups at

7   Zumba classes across the country started organizing Zumbathon™ charity events

8   to raise money for breast cancer and other worthy causes. Over 1,200 of these

9   charity events have already occurred, about one hundred of which have occurred in

10   California. The numbers grew so high that Plaintiff itself instituted a formal

11   campaign of Party in Pink™ Zumbathon™ charity events, with more than 725

12   events (so far), seeking to raise awareness of breast cancer and funding for the

13   pursuit of a cure. Plaintiff also started a campaign of Party Hearty™ Zumbathon™

14   charity events with the American Heart Association, seeking to raise awareness of

15   heart disease, with hundreds of events in the works and over 400 already having

16   taken place. *See* Compl. at ¶13.

17        As a result of Plaintiff's efforts, the high degree of promotion and the quality

18   and popularity of the Zumba® products and classes, the Zumba® marks and the

19   Zumba® fitness DVDs, products, and services have been prominently placed in the

20   minds of the public. Consumers, purchasers and the members of the public have

21   become familiar with the Plaintiff's intellectual property, fitness DVDs, fitness

22   programs and other products and services, and have come to recognize the

23   Zumba® marks, products and services and associate them exclusively with

24   Plaintiff – Plaintiff has acquired a valuable reputation and goodwill among the

25   public as a result of such association. Indeed, the Zumba® marks are famous in

26   the United States. *See* Compl. at ¶14.

27   / / /

28   / / /

(ii)   Proximity or relatedness of goods

The second factor, the proximity or relatedness of Plaintiff's authentic Zumba Fitness® DVD box set and the Zumba® DVDs therein, and Defendant's counterfeit versions thereof, also points toward a likelihood of confusion. The more related or complementary goods are, the higher the danger of consumer confusion. *See* Gallo Cattle, 967 F.2d at 1291. Here, the infringed marks and infringing marks appear on identical goods – fitness sets and DVDs. More specifically, both products bear the marks Zumba® and Zumba Fitness®. *See* Sakalian Decl. at ¶4, and Ex. "C" - "D," respectively (photographs of Plaintiff's authentic Zumba Fitness® 4 DVD box set and the Zumba® fitness DVDs therein, and Defendant's infringing Zumba® fitness DVDs).

(iii)   Similarity of sight, sound, and meaning of marks

The third factor, similarity of sight, sound, and meaning of the marks also supports a finding of likelihood of confusion. Where, as here, the products bearing the disputed marks are identical, even less similarity is required to demonstrate a likelihood of confusion. *See* Sleekcraft, 599 F.2d at 350. Given this low standard, Plaintiff has easily and adequately demonstrated that the marks are similar. Marks should be compared based on their sight, sound, and meaning as they appear in the marketplace, and similarities between marks should be weighed more heavily than differences. *See* Sleekcraft, 599 F.2d at 350. Plaintiff has submitted photographs of its authentic product along with photographs of the counterfeit product purchased from Defendant with the Zumba® and Zumba Fitness® marks clearly displayed. *See* Sakalian Decl. at ¶4, and Ex. "C" - "D," respectively (photographs of Plaintiff's authentic Zumba Fitness® 4 DVD box set and the Zumba® fitness DVDs therein, and Defendant's infringing Zumba® fitness DVDs). Under the lower standard for marks used for identical products, Defendant's use of Plaintiff's Zumba® and Zumba Fitness® marks is sufficiently similar in sight, sound, and meaning.

(iv)     Degree to which marketing channels converge

In considering the marketing channels used by Plaintiff and Defendant, the channels largely overlap, which makes consumer confusion more likely. Plaintiff markets its Zumba® fitness DVD sets on television infomercials and on its Internet website: www.zumba.com.  *See* Compl. at ¶12; *see also* Sakalian Decl. at ¶7. Defendant sold his counterfeit "ZUMBA FITNESS 4 DVD Box Set Factory Sealed" on eBay, seller ID "showswel," thus reaching the same type of potential consumer as Plaintiff. *See* Sakalian Decl. at ¶3-4, and Ex. "A" - "B," thereto.

(v)     Type of goods and degree of care consumers are
likely to exercise in purchasing goods

The goods in question in the instant case are fitness sets and DVDs, specifically, four (4) different fitness DVDs that Plaintiff offered for sale as part of its Zumba® fitness 4 DVD box set.  Plaintiff's Zumba® fitness 4 DVD box set kit is relatively inexpensive. *See* Sakalian Decl. at ¶8. Thus, the presumption that buyers of expensive products exercise greater care is not applicable here.

(vi)     Intent of the Defendant in selecting the allegedly
infringing mark

Though bad intent is not necessary to demonstrate a likelihood of confusion, where the plaintiff establishes that defendant knowingly used an infringing mark, there is a presumption that the infringer will accomplish his purpose, and the public will be deceived. *See* Sleekcraft, 599 F.2d at 354.  Plaintiff has submitted evidence to demonstrate that Defendant was aware or should have been aware that he was selling counterfeit Zumba®-branded merchandise. *See* Sakalian Decl. at ¶9, and Ex. "F," thereto.  Moreover, Defendant's failure to defend against Plaintiff's Complaint, which includes allegations of bad faith, intent, and willful conduct, *see* Compl. at ¶26-28, is indicative of Defendant's knowledge regarding the source of his infringing products and the counterfeit nature of the products he sold.

/ / /

1            (vii)   <u>Evidence of actual confusion and likelihood that</u>

2                     <u>the parties will expand their product lines</u>

3       Consumers are being confused everyday by Internet auction site sellers such

4 as Defendant. Counterfeit version of Plaintiff's Zumba Fitness® 4 DVD box sets,

5 and the Zumba® fitness DVDs therein, like those sold by Defendant, have flooded

6 the market leading consumers to believe that the counterfeit versions being sold are,

7 in fact, authentic when they clearly are not. *See* Sakalian Decl. at ¶4, and Ex. "C" -

8 "D," thereto.

9       Plaintiff has no evidence with respect to whether Defendant will expand his

10 product line.

11                   (viii)   <u>Conclusion</u>

12       Taking all the allegations of the Complaint as true, Plaintiff has adequately

13 pled and demonstrated that it's Zumba® and Zumba Fitness® marks would likely

14 be confused with Defendant's use thereof on counterfeit versions of Plaintiff's

15 Zumba® fitness 4 DVD box sets.

16           **2.**    **<u>Copyright Infringement Claim</u>**

17       To prove a claim of copyright infringement, a plaintiff must show:

18 ownership of a valid copyright, and copying of constituent elements of the work

19 that are original. *See* <u>Feist Pubs., Inc. v. Rural Telephone Service Co., Inc.</u>, 499

20 *U.S.* 340, 361 (1991). In its Complaint, Plaintiff alleges all facts necessary to

21 prove copyright infringement by Defendant.

22           **(a)**    **Plaintiff's ownership of valid copyrights**

23       First, Plaintiff adequately alleges its ownership of nine (9) copyrights at

24 issue. *See* Compl. at ¶19, and Ex. "M" - "U," thereto. A federal registration of a

25 copyright constitutes prima facie evidence of its validity and of plaintiff's

26 exclusive rights to the copyright. *See* <u>Feist Pubs., Inc.</u>, 499 *U.S.* at 361.

27 / / /

28 / / /

1
2

    **(b)**  **Defendant's copying of original elements of Plaintiff's works**

3    Second, Plaintiff adequately alleges infringement of these copyrighted works
4 by Defendant who, without authorization or consent, distributed counterfeit Zumba
5 Fitness® 4 DVD box sets, including the Zumba® DVDs therein, by means of eBay,
6 seller ID "showswel." *See* Compl. at ¶24-25, and Ex. "V," thereto; *see also*
7 Sakalian Decl. at ¶3-4, and Ex. "A"-"D," thereto.

8      **3.**  **Trademark Dilution Claim**

9    In order to prove federal trademark dilution, a plaintiff must show that: the
10 mark at issue is famous, the defendant is making a commercial use of the mark in
11 commerce, the defendant's use began after the mark became famous, and the
12 defendant's use of the mark dilutes the quality of the mark by diminishing the
13 capacity of the mark to identify and distinguish goods and services. *See* Panavision,
14 Int'l v. Torppen, 141 F.3d 1316, 1324 (9th Cir.1998).

15    In deciding whether a mark is famous, the courts will look to the following
16 factors:  the degree of inherent or acquired distinctiveness; the duration and extent
17 of use; the amount of advertising and publicity; the geographic extent of the market;
18 the channels of trade; the degree of recognition in trading areas; any use of similar
19 marks by third parties; and whether the mark is registered.  15 *U.S.C.* § 1125(c);
20 *see also* Mead Data Central, Inc. v. Toyota Motor Sales, U.S.A., Inc., 875 F.2d
21 1026 (2nd Cir.1989).  Once the prerequisites for a dilution claims are satisfied, the
22 owner of a mark can bring an action against any use of that mark that dilutes the
23 distinctive quality of that mark, either through "blurring" or "tarnishment."
24 Tarnishment occurs when the mark is cast in an unflattering light, typically through
25 its association with inferior or unseemly products or services. *See* Toys "R" Us v.
26 Akkaoui, 40 U.S.P.Q.2d (BNA) 1836 (N.D. Cal. 1996).

27 / / /
28 / / /

### (a)   Plaintiff's ownership of famous marks

Plaintiff's Zumba® products, and specifically the Zumba® Fitness 4 DVD box set and the Zumba® DVDs therein, have become increasingly popular and famous over the past several years, particularly in light of the company's advertising as well as consumer word of mouth referrals given the effectiveness of the products. Plaintiff has spent substantial time, money and effort in developing consumer recognition and awareness of its marks, copyrights and products. Plaintiff has spent an enormous amount of money on print and internet advertising in order to inform consumers of the benefits Plaintiff's products and services. Through the extensive use of the Plaintiff's marks, Plaintiff has built up and developed significant goodwill in its entire fitness product line. A wide array of newspapers, magazines and television networks have included advertising of Plaintiff's products, which are immediately identified by Plaintiff's marks and have featured full length articles describing both the popularity and benefits of the Zumba® Fitness products, apparel and programs. These periodicals and new media outlets have included, The Washington Post, CNN, The New York Times, Shape Magazine, The Wall Street Journal, Redbook, Time Magazine, Readers Digest, The London Times, Reuters, SELF Magazine, Cosmopolitan Magazine, Variety Magazine as well as many others. *See* Compl. at ¶12.

As a result of Plaintiff's efforts, the high degree of promotion and the quality and popularity of the Zumba® products and classes, the Zumba® marks and the Zumba® fitness DVDs, products, and services have been prominently placed in the minds of the public. Consumers, purchasers and the members of the public have become familiar with the Plaintiff's intellectual property, fitness DVDs, fitness programs and other products and services, and have come to recognize the Zumba® marks, products and services and associate them exclusively with Plaintiff – Plaintiff has acquired a valuable reputation and goodwill among the public as a result of such association. Indeed, the Zumba® marks are famous in

the United States. *See* Compl. at ¶14.

### (b)   Defendant's commercial use of Plaintiff's famous marks

On March 13, 2011, Plaintiff purchased a purported "ZUMBA FITNESS 4 DVD Box Set Factory Sealed" from Defendant utilizing eBay, under seller ID "showswel," for a cost of $63.99 charged to the PayPal electronic payment account of Plaintiff's investigator. *See* Compl. at ¶24, and Ex. "V," thereto; *see also* Sakalian Decl. at ¶3, and Ex. "A" - "B," thereto. The product purchased from Defendant was inspected to determine authenticity. The inspection of the purchased item confirmed that the item Defendant sold to the investigator were, in fact, counterfeit and unauthorized Zumba® fitness DVDs. *See* Compl. at ¶25; *see also* Sakalian Decl. at ¶4, and Ex. "C" - "D," thereto.

### (c)   Defendant's use began after Plaintiff's marks were famous

Plaintiff uses its Zumba® and Zumba Fitness® trademarks on and in connection with its Zumba® Fitness 4 DVD box set, among other products and services, and has been using its Zumba® trademarks since as early as 2001.

Defendant sold at least four (4) counterfeit versions of Plaintiff's Zumba® Fitness 4 DVD box sets, or, sixteen (16) individual counterfeit Zumba® fitness DVDs, between March 11, 2011 to March 19, 2011 on eBay, seller ID "showswel." *See* Sakalian Decl. at ¶9, and Ex. "F," thereto.

### (d)   Defendant's use tarnishes the quality of Plaintiff's marks

Defendant has tarnished Plaintiff's Zumba® and Zumba Fitness® trademarks by selling inferior quality counterfeit fitness merchandise bearing Plaintiff's famous marks. Tarnishment occurs when the mark is cast in an unflattering light, typically through its association with inferior or unseemly products or services. *See* Toys "R" Us v. Akkaoui, 40 U.S.P.Q.2d (BNA) 1836

1  (N.D. Cal. 1996).  Defendant has cast Plaintiff's marks in an unflattering light by
2  offering for sale, selling, and distributing counterfeit versions of Plaintiff's
3  Zumba® Fitness 4 DVD box sets.

4      **D.**    **Sum of Money at Stake**

5      The prevailing party in an action for willful trademark infringement, willful
6  copyright infringement, and willful trademark dilution is entitled to, *inter alia*,
7  statutory damages, reasonable attorney's fees, recovery of costs, and appropriate
8  injunctive relief.  Plaintiff has alleged in its Complaint that Defendant engaged in
9  intentional, knowing, and willful acts of infringement of Plaintiff's Zumba® and
10  Zumba Fitness® trademarks and copyrights, and intentionally and knowingly
11  diluted said trademarks.   Defendant has failed to respond to these serious
12  allegations despite notice thereof.  In addition, Plaintiff has submitted evidence to
13  show that Defendant was on notice that he was engaging in infringing activity, or
14  that he should have known that he was engaged in infringing conduct.

15      The Court should therefore find that pursuant to the relevant sections of the
16  *Trademark Act*, *Copyright Act*, and the *Lanham Act*, and the facts established by
17  Plaintiff for purposes of this motion, an enhancement of electable statutory
18  damages is warranted, in addition to attorneys' fees and costs, thereby putting a
19  total of no less than $4,150,000.00 of statutory damages at stake.

20      **1.**    **Statutory Damages for Trademark Infringement and**
21      **Trademark Dilution**

22      The *Trademark Act* provides that in a case involving the use of a
23  counterfeit mark in connection with the sale, offering for sale, or distribution of
24  goods and services, or any willful violation under section 43(c) of the *Lanham Act*
25  (15 *U.S.C.* 1125(c)), the plaintiff may elect to recover statutory damages in the
26  amount of not less than $1,000.00 or more than $200,000.00 per counterfeit mark
27  per type of goods sold, offered for sale, or distributed. 15 *U.S.C.* § 1117(c)(1).
28  Plaintiff seeks maximum statutory damages of $200,000.00 for each of

1  Defendant's use of Plaintiff's Zumba® and Zumba Fitness® trademarks.  In
2  addition, if the Court finds that the use of the counterfeit mark was willful, the
3  plaintiff may be granted an award of statutory damages of not more than
4  $2,000,000.00 per counterfeit mark per type of goods sold, offered for sale, or
5  distributed. 15 *U.S.C.* § 1117(c)(2).  Plaintiff has alleged that Defendant's use was
6  willful, an allegation that Defendant has failed to respond to, and Plaintiff has
7  provided evidence to show that Defendant knew, or should have known, that the
8  goods he was selling were, in fact, counterfeit.

9      Based on the foregoing, Plaintiff seeks statutory damages of $200,000.00 for
10  Defendant's infringing use of Plaintiff's Zumba® and Zumba Fitness® trademarks
11  totaling $400,000.00 for trademark infringement and dilution pursuant to 15 *U.S.C.*
12  § 1117(c)(1).

13          **2.    Statutory Damages for Copyright Infringement**

14      Similarly, the *Copyright Act* provides that the statutory range for each
15  copyright infringement is between $750.00 and $30,000.00 for all infringements
16  involved in the action.  Specifically, Plaintiff is entitled to a default judgment
17  against Defendant for the maximum statutory amount of no less than $30,000.00,
18  as provided for under 17 *U.S.C.* § 504(c)(1).

19      In addition to seeking ordinary statutory damages, Plaintiff may seek the
20  maximum statutory enhancement for willful infringement, for a total of
21  $150,000.00 pursuant to 17 *U.S.C.* § 504(c)(2).  17 *U.S.C.* § 504(c)(2) provides
22  that: "[in] a case where the copyright owner sustains the burden of proving, and
23  the court finds, that infringement was committed willfully, the court in its
24  discretion may increase the award of statutory damages to a sum of not more than
25  $150,000.00."

26      Due to Defendant's violation of Plaintiff's copyright rights, this Court
27  should award statutory damages of no less than $30,000.00 for all copyright
28  infringements in this action.

E.     **No Possibility of Dispute Concerning Material Facts**

There is no information before the Court concerning a possible dispute of material facts because Defendant has not appeared in this action.

F.     **Default Not Due to Excusable Neglect**

Defendant's default in this matter was not due to excusable neglect. Plaintiff's Complaint was filed on March 23, 2011, and Defendant was served with a copy of the Summons and Complaint on April 8, 2011 at his place of residence. *See* Sakalian Decl. at ¶5.  Default was entered by the Clerk on May 17, 2011. *See* Sakalian Decl. at ¶6.

G.     **Policy Favoring Decisions on the Merits Does Not Outweigh Plaintiff's Right to Relief**

Any policy in favor of deciding cases on the merits does not outweigh Plaintiff's rights to relief in this matter.  Defendant had every opportunity to defend himself in this action, or otherwise responded to Plaintiff's Complaint, despite notice thereof.  Favoring this policy of deciding cases on the merits in the case before this Court would effectively condone and reward a Defendant who refuses to appear in order to decide the case on the merits.

## IV.   REMEDIES

Plaintiff is required to prove all damages sought in the Complaint. *Fed.R. Civ.P.* 54(c); *see also* Philip Morris USA, Inc. v. Castworld Products, Inc., 219 F.R.D. 494, 498 (C.D. Cal. 2003).  In determining damages, a court can rely on the declarations submitted by Plaintiff or order a full evidentiary hearing. *Fed.R. Civ.P.* 55(b)(2). Plaintiff's burden in "proving up" damages is relatively lenient. *See* Philip Morris, 219 F.R.D. at 498.   In this instance, Plaintiff seeks statutory damages, reasonable attorney's fees, costs, and a permanent injunction for Defendant's willful infringement of Plaintiff's Zumba® and Zumba Fitness® trademarks and copyrights.

/ / /

### A.   **Statutory Damages**

Plaintiff seeks a statutory award of not less than $430,000.00 as compensation for Plaintiff's damages, as a punishment for Defendant's willful conduct, and as a deterrent to future infringement by Defendant and other pirates, infringers and counterfeiters.

Under the *Lanham Act*, where a court finds that the use of a counterfeit mark was willful, statutory damages "not more than $2,000,000 for counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just" are available. 15 *U.S.C.* §1117(c). While willful infringement requires "knowledge that the defendant's conduct constitutes trademark infringement," Peer Int'l Corp. v. Pausa Records, Inc., 909 F. 2d 1332, n.3 (9th Cir. 1990), willfulness can be inferred from a defendant's failure to defend. *See* Philip Morris USA, Inc. v. Castworld Products, Inc., 219 F.R.D. 494, 501 (C.D. 2003). It should also be noted that "[c]ourts faced with determining statutory damages under the [Lanham] Act have analogized to the body of case law interpreting similar provisions in the Copyright Act." *See* Philip Morris, 219 F.R.D. at 501.   The Supreme Court has held that deterrence of future infringement is an important factor in determining damages under the Copyright Act, stating that: "A rule of liability which merely takes away the profits from an infringement would offer little discouragement to infringers. It would fall short of an effective sanction for enforcement of copyright policy. The statutory rule, formulated after long experience not merely compels restitution of profit and reparation for injury, but also is designed to discourage wrongful conduct. The discretion of the court is wide enough to permit a resort to statutory damages for such purpose. Even for uninjurious and unprofitable invasions of copyright the court may, if it deems just, impose a liability within the statutory limits to sanction and vindicate the statutory policy." *Id.* (applying copyright statutory damages jurisprudence to the *Lanham Act* and *citing* F.W. Woolsworth Co. v. Contemporary Arts, 344 U.S. 228, 233

1 | (1952)).

2 |     In determining whether the amount of statutory damages sought is
3 | reasonable, courts will look to see if the amount is calculated to serve the purposes
4 | of awarding statutory damages, including compensation for lost profits,
5 | punishment of willful infringing conduct, and the deterrence of infringing activity.
6 | *See* Philip Morris, 219 F.R.D. at 501-502. However, a plaintiff may elect statutory
7 | damages for copyright infringement, and therefore, trademark infringement
8 | "regardless of the adequacy of the evidence offered as to his actual damages and
9 | the amount of defendant's profits." *See* Columbia Pictures Television, Inc. v.
10 | Krypton Broadcasting of Birmingham, Inc., F.3d 1186, 1194 (9th Cir. 2001).

11 |     Defendant's demand of no less than \$430,000.00 dollars is reasonably
12 | calculated to accomplish the purposes of awarding statutory damages. Plaintiff has
13 | set forth adequate evidence, in both the Complaint and by way of declaration to
14 | establish that Defendant's conduct was willful. Defendant failed to comply with
15 | the judicial process and has not in any way participated in the present litigation.
16 | This allows for the inference that Defendant's conduct was in fact willful. *See*
17 | Philip Morris USA, Inc. v. Castworld Products, Inc., 219 F.R.D. 494, 501(C.D.
18 | 2003) (holding that defendant willfully infringed plaintiff's trademark based on
19 | plaintiff's allegations of willful infringement and defendant's "failure to comply
20 | with the judicial process or to participate in any way in the litigation").
21 | Additionally, willfulness can be inferred from the declarations and exhibits
22 | attached to this application for default judgment. *Fed.R. Civ.P.* 55(b)(2); *see also*
23 | Adobe System Inc. v. Brooks, 3 2009 WL 593343 (N.D. 2009) (Unpublished).
24 | Defendant's eBay Feedback Profile evidences his sale of at least 4 counterfeit
25 | Zumba®-branded fitness products, or 16 individual counterfeit Zumba® Fitness
26 | DVDs. *See* Sakalian Decl. at ¶9, and Ex. "F," thereto. Given that Plaintiff's
27 | investigator received a counterfeit product from Defendant, and given the price at
28 | which Defendant offered for sale and sold his purported Zumba®- and Zumba

1  Fitness®-branded merchandise, it is inferable that all of the Zumba® Fitness DVD
2  box sets, and the Zumba® DVDs therein, sold by Defendant are indeed counterfeit.
3  This evidence more than suggests that Defendant's conduct was not only
4  knowledgeable, but purposeful, entitling Plaintiff to the maximum allowable
5  statutory damages.

6      However, Plaintiff is not asking for the maximum allowable statutory
7  damages. Plaintiff has alleged that Defendant has willfully infringed Plaintiff's
8  registered Zumba® and Zumba Fitness® marks.   Under the *Lanham Act*, this
9  would allow for a maximum of $4,000,000.00 dollars in statutory damages. Yet,
10  Plaintiff only seeks $430,000.00 in statutory damages for trademark and copyright
11  infringement. With the imposition of this award, Plaintiff seeks to deter Defendant
12  and similarly situated counterfeiters, pirates and infringers from bringing into
13  commerce counterfeit Zumba®-branded products and DVDs, and from exhibiting
14  total disregard for the *Federal Rules of Civil Procedure*. Plaintiff also seeks
15  compensation for damages (the total extent of which cannot be known as
16  Defendant has failed to participate in this litigation) caused by Defendant's
17  infringement and to punish Defendant appropriately for his extensive piratical
18  activities (the true extent of which is also unknown to Plaintiff as Defendant has
19  failed to meaningfully take part in this litigation).

20      Accordingly, $430,000.00 is reasonably calculated to accomplish the
21  purposes of providing statutory damages under the *Lanham Act* and the *Copyright*
22  *Act*.

23      **B.   Costs**

24      Pursuant to 15 *U.S.C.* §1117(a), Plaintiff is entitled to judgment against said
25  Defendant for recovery of total costs Plaintiff has incurred in this action due to
26  Defendant's violation of 15 *U.S.C.* §1125(a) and willful violation of 15 *U.S.C.*
27  §1125(c) in the amount of $731.07. *See* Sakalian Decl. at ¶12.

28  / / /

### C.   **Attorneys' Fees**

Pursuant to 15 *U.S.C.* §1117(a), Plaintiff is entitled to judgment against Defendant for reasonable attorneys' fees incurred by Plaintiff in the prosecution of this action, due to the "exceptional circumstances" surrounding Defendant's willful violation of 15 *U.S.C.* §1125(c). *See* Lindy Pen Co. v. Bic Pen Corp., 982 F. 2d 1400, 1409 (9th Cir. 1993) (stating that a case is "exceptional" when infringement is "malicious, fraudulent, deliberate, or willful."); *see also* Taylor Made Golf Co., Inc., v. Carsten Sports Ltd., 175 F.R.D. 658 (holding that a case may be deemed "exceptional," and merit an award of attorney's fees under the Lanham Act, when Defendant disregards the proceedings and does not appear). Pursuant to 15 *U.S.C.* §1117(b), Plaintiff is also entitled to judgment against Defendant for reasonable attorneys' fees due to Defendant's willful violation of 15 *U.S.C.* §1114(1)(a) (as provided for under 15 *U.S.C.* §1117(e)).  Under Local Rule 55-3, attorneys' fees shall be calculated according to a fee schedule based upon the amount of the default judgment absent costs.  Pursuant to the Local Rules, Plaintiff is entitled to $5,600.00 in attorneys' fees. *See* Sakalian Decl. at ¶13.

### D.   **Injunctive Relief**

The Lanham Act gives the Court "[p]ower to grant injunctions according to the rules of equity and upon such terms as the court may deem reasonable, to prevent the violation" of a mark holder's rights. 15 *U.S.C.* § 1116(a); *see also* PepsiCo Inc. v. Cal. Sec. Cans, 238 F.Supp.2d 1172, 1177-78 (C.D. Cal. 2002). Plaintiff seeks an injunction covering three items listed below as they relate to prevention of future infringing activity.

Plaintiff is entitled to a permanent injunction against Defendant and all of his agents, officers, employees, representatives, successors, assigns, attorneys, and all other persons acting for, with, by, through, or under authority from Defendant, or in concert or participation with Defendant: (1) enjoining and permanently restraining Defendant from manufacturing, advertising, distributing, offering for

sale, selling, whether directly or indirectly, counterfeit Zumba®- and Zumba Fitness®-branded merchandise, including any merchandise of any kind bearing Plaintiff's marks or names that are confusingly similar to the trademarks, trade names, designs or logos of Plaintiff; (2) enjoining and permanently restraining Defendant from using Plaintiff's marks or any copy, reproduction, or colorable imitation, or confusingly similar simulation of Plaintiff's marks on or in connection with the promotion, advertising, distribution, manufacture or sale of Defendant's goods; (3) ordering Defendant to cancel, withdraw and recall all his promotions, advertisements and merchandise bearing Plaintiff's marks or any confusingly similar simulation to Plaintiff's marks, which have been published, placed or shipped by Defendant or under Defendant's authority, to any person, entity, or customer, including, without limitation, any publisher, agency, wholesaler, distributor, retailer, consignor or marketer, and also deliver to each publisher or customer a copy of this Court's order as it relates to said injunctive relief against Defendant.

## V.    CONCLUSION

For the foregoing reasons and in the manner set forth above, the Court should grant Plaintiff's Motion for Entry of Default Judgment by Court against Defendant for damages totaling no less than $430,000.00, along with the requested injunctive relief.


DATED: June 9, 2011                          JOHNSON & PHAM, LLP


                                             By: _____
                                             Ani Sakalian, Esq.
                                             Attorneys for Plaintiff
                                             ZUMBA FITNESS, LLC

### DECLARATION OF ANI SAKALIAN

I, ANI SAKALIAN, declare as follows:

1.      I am an attorney at law licensed to practice in the State of California and am an associate with the law firm of Johnson & Pham, LLP, counsel of record for Plaintiff ZUMBA FITNESS, LLC ("Plaintiff"). The following is within my personal knowledge and if called upon as a witness, I could and would competently testify thereto.

2.      Upon investigation into this matter, I have determined that Defendant WILLIAM CHESTER MOORE ("Defendant") resides at 528 Wilson Road, Annapolis, Maryland 21401-1052.

3.      On March 13, 2011, Plaintiff purchased a purported "ZUMBA FITNESS 4 DVD Box Set Factory Sealed" from Defendant utilizing the Internet auction website known as eBay.com ("eBay"), under seller ID "showswel," for a cost of $63.99 charged to the PayPal electronic payment account of Plaintiff's investigator. A true and correct copy of Defendant's eBay item listing offering for sale a "ZUMBA FITNESS 4 DVD Box Set Factory Sealed" is attached hereto and marked as Exhibit "A."  In addition, a true and correct copy of the PayPal purchase receipt evidencing and identifying Defendant as the seller of a "ZUMBA FITNESS 4 DVD Box Set Factory Sealed" on eBay, seller ID "showswel," is attached hereto and marked as Exhibit "B."  *See also* Compl., and Ex. "V," thereto.

4.      The product purchased from Defendant was inspected to determine authenticity.   The inspection of the purchased item confirmed that the item Defendant sold to the investigator were, in fact, counterfeit and unauthorized Zumba® Fitness DVDs and related materials.   Photographs of an authentic Zumba® Fitness DVD box set offered by Plaintiff to consumers in the United States, along with the relevant Zumba® Fitness DVDs, and materials therein, are attached hereto and collectively marked as Exhibit "C." Photographs of the package received from Defendant containing a counterfeit "ZUMBA FITNESS 4

1  DVD Box Set Factory Sealed" are attached hereto and collectively marked as
2  Exhibit "D."

3      5.      Plaintiff filed its Complaint against Defendant on March 23, 2011,
4  and Defendant was personally served with a copy of the Summons and Complaint
5  on April 8, 2011 at 528 Wilson Road, Annapolis, Maryland 21401-1052.

6      6.      Plaintiff requested entry of default against Defendant on May 5, 2011,
7  and the clerk entered default of said Defendant on May 17, 2011.

8      7.      Plaintiff's website – www.zumba.com – contains an "ABOUT" link
9  which provides information "ABOUT ZUMBA® FITNESS." A true and correct
10  copy of Plaintiff's "ABOUT ZUMBA® FITNESS" website page is attached
11  hereto and marked as Exhibit "E."

12      8.      An authentic Zumba® Fitness DVD box set, which, amongst other
13  materials, contains four (4) Zumba® Fitness DVDs, was offered for sale by
14  Plaintiff for a cost of approximately $58.95 - $60.00.

15      9.      Defendant has sold at least four (4) counterfeit versions of Plaintiff's
16  Zumba® Fitness 4 DVD box sets, or 16 individual counterfeit Zumba® Fitness
17  DVDs, between March 11, 2011 to March 19, 2011 on eBay.com, seller ID
18  "showswel." A true and correct copy of Defendant's eBay "Feedback Profile"
19  referencing these sales is attached hereto and marked as Exhibit "F."

20      10.     Defendant is not an infant or an incompetent or in military service or
21  otherwise exempted under the Soldiers' and Sailors' Civil Relief Act of 1940.

22      11.     Notice of this application for default judgment by the Court was
23  served on Defendant on June 9, 2011 by United States Postal Mail as required
24  by Local Rule 14.12.1.

25      12.     Plaintiff's total costs including but not limited to filing of the
26  Complaint, service of the Summons and Complaint, and copying charges total
27  approximately $731.07.

28  ///

13. Plaintiff seeks attorneys' fees in the prosecution of this action in the amount of $5,600.00 pursuant to the fee schedule established by Local Rule 55-3.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed this 9th day of June, 2011, at Woodland Hills, California.

Ani Sakalian, Esq.

1                             **PROOF OF SERVICE**

2       I am a resident of the State of California, over the age of eighteen years, and
not a party to the within action. My business address is Johnson & Pham 6355
3   Topanga Canyon Blvd., Suite 115, Woodland Hills, CA 91367. On June 9, 2011, I
served the within document(s):

4
           **NOTICE OF MOTION AND MOTION FOR ENTRY OF**
5      **DEFAULT JUDGMENT BY COURT; MEMORANDUM OF**
       **POINTS AND AUTHORITIES; DECLARATION OF ANI**
6     **SAKALIAN IN SUPPORT THEREOF AND [PROPOSED]**
                     **JUDGMENT**
7

8     ☐     FACSIMILE - by transmitting via facsimile the document(s) listed
            above to the fax number(s) set forth on the attached
9         Telecommunications Cover Page(s) on this date before 5:00 p.m.

10    ☒     MAIL - by placing the document(s) listed above in a sealed envelope
           with postage thereon fully prepaid, in the United States mail at Los
11        Angeles, California addressed as set forth below.

    ☐     PERSONAL SERVICE - by personally delivering the document(s)
12       listed above to the person(s) at the address(es) set forth below.

13    ☐     OVERNIGHT COURIER - by placing the document(s) listed above
           in a sealed envelope with shipping prepaid, and depositing in a
14        collection box for next day delivery to the person(s) at the address(es)
           set forth below via UNITED PARCEL SERVICE.

15  William Chester Moore

16  528 Wilson Rd.
   Annapolis, MD 21401
17

18

19       I am readily familiar with the firm's practice of collection and processing
   correspondence for mailing. Under that practice it would be deposited with the
20  U.S. Postal Service on that same day with postage thereon fully prepaid in the
   ordinary course of business. I am aware that on motion of the party served,
21  service is presumed invalid if postal cancellation date or postage meter date is
   more than one day after date of deposit for mailing in affidavit.
22

23       I declare that I am employed in the office of a member of the bar of this
   court at whose direction the service was made.
24

      Executed on June 9, 2011, at Los Angeles, California.
25

26

27                                Nora Ivy Ounjian

28